IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ROBERT THEODORE WOODS                    Case No. 3:14-cv-01761-MA

                    Plaintiff,              OPINION AND ORDER

        v.

COMMISSIONER SOCIAL SECURITY
ADMINISTRATION,

                    Defendant.

RICHARD A. SLY
610 S.W. Broadway, Suite 405
Portland, OR 97205

LINDA S. ZISKIN
P.O. Box 753833
Las Vegas, NV 89136

        Attorneys for Plaintiff

BILLY J. WILLIAMS
United States Attorney
District of Oregon
JANICE E. HEBERT
Assistant United States Attorney
1000 S.W. Third Ave., Suite 600
Portland, OR 97204-2902

JEFFREY E. STAPLES
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 Fifth Ave., Suite 2900 M/S 221A
Seattle, WA 98104-7075

        Attorneys for Defendant


1 - OPINION AND ORDER

MARSH, Judge

Plaintiff Robert Theodore Woods seeks judicial review of the final decision of the Commissioner of Social Security denying his application for a period of disability and disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-403. This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). For the reasons that follow, I affirm the Commissioner's decision.

## PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff protectively filed an application for a period of disability and disability insurance benefits on August 15, 2011, alleging disability beginning May 2, 2007, due to pain and fatigue resulting from orthopedic injuries to his neck, back and knee. Plaintiff's claims were denied initially and upon reconsideration. Plaintiff filed a request for a hearing before an administrative law judge ("ALJ"). An ALJ held a hearing on May 30, 2013, at which plaintiff appeared with his attorney and testified. A vocational expert, Paul K. Morrison, also appeared at the hearing and testified. On June 11, 2013, the ALJ issued an unfavorable decision. The Appeals Council denied plaintiff's request for review, and therefore, the ALJ's decision became the final decision of the Commissioner for purposes of review.

Plaintiff was born on February 27, 1968, and was 44 years old on the date last insured. Plaintiff completed high school and some community college classes and has past relevant work as a metal fabricator and painter.

## THE ALJ'S DISABILITY ANALYSIS

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520. Each step

2 - OPINION AND ORDER

is potentially dispositive.  The claimant bears the burden of proof at steps one through four.  *See Valentine v. Commissioner Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  At step five, the burden shifts to the Commissioner to show that the claimant can do other work which exists in the national economy.  *Hill v. Astrue*, 698 F.3d 1153, 1161 (9th Cir. 2012).

The ALJ concluded that plaintiff met the insured status requirements of the Social Security Act through December 31, 2012. A claimant seeking disability insurance benefits under Title II must establish disability on or prior to the last date insured.  42 U.S.C. § 416(I)(3); *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since his alleged onset of disability.  At step two, the ALJ found that plaintiff had the following severe impairments: cervical disc herniation with fusion surgery, degenerative disc disease of the lumbar spine, gastroesophageal reflux disease ("GERD"), and torn knee cartilage – repaired.  At step three, the ALJ found that plaintiff's impairments, or combination of impairments, did not meet or medically equal a listed impairment.

The ALJ assessed plaintiff with a residual functional capacity ("RFC") to perform light work, except plaintiff can reach overhead occasionally; can never climb ladders, ropes or scaffolds; he can occasionally climb ramps and stairs; he can occasionally crouch, stoop, kneel, or crawl; he cannot operate foot controls; and he needs to avoid hazardous machinery.

At step four, the ALJ found that plaintiff is unable to perform any past relevant work.  At step five, the ALJ determined that transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that

3 - OPINION AND ORDER

plaintiff is not disabled whether or not plaintiff has transferable skills. The ALJ found that considering plaintiff's age, education, work experience, and residual functional capacity, jobs exist in significant numbers in the national economy that plaintiff can perform, such as gate guard, food assembler, or printed circuit board assembler. Alternatively, the ALJ found that if plaintiff were limited to sedentary exertional activities, plaintiff could perform the requirements of representative occupations such as electronics assembler, appointment clerk, or time keeper. Accordingly, the ALJ concluded that plaintiff has not been under a disability under the Social Security Act from May 2, 2007, through December 31, 2012, the date last insured.

## ISSUES ON REVIEW

On appeal to this court, plaintiff contends the following errors were committed: (1) the ALJ improperly evaluated his testimony; (2) the ALJ improperly evaluated the opinion of examining physician Kevin Jones, M.D.; (3) the ALJ improperly evaluated the lay testimony; (4) the ALJ erred at step five by failing to find that plaintiff has transferrable skills; and (5) the ALJ erred by relying on testimony from the vocational expert.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010). "Substantial evidence is more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hill*, 698 F.3d at 1159 (internal quotations omitted); *Valentine*, 574 F.3d at 690. The court must weigh all the evidence, whether it supports or detracts from the Commissioner's decision. *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014);

4 - OPINION AND ORDER

*Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986).  The Commissioner's decision must be upheld, even if the evidence is susceptible to more than one rational interpretation.  *Batson v. Commissioner Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004).  If the evidence supports the Commissioner's conclusion, the Commissioner must be affirmed; "the court may not substitute its judgment for that of the Commissioner." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001); *Garrison*, 759 F.3d at 1010.

## I.    The ALJ Did Not Err in Discounting Plaintiff's Credibility

To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must perform two stages of analysis.  20 C.F.R. § 404.1529.  The first stage is a threshold test in which the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged.  *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012); *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008).  At the second stage of the credibility analysis, absent affirmative evidence of malingering, the ALJ must provide clear and convincing reasons for discrediting the claimant's testimony regarding the severity of the symptoms.  *Carmickle v. Commissioner Soc. Sec. Admin.*, 533 F.3d 1155, 1166 (9th Cir. 2008); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007).

The ALJ must make findings that are sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony.  *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014); *Tommasetti*, 533 F.3d at 1039.  Factors the ALJ may consider when making such credibility determinations include the objective medical evidence, the claimant's treatment history, the claimant's daily activities, inconsistencies in testimony, effectiveness or

adverse side effects of any pain medication, and relevant character evidence. *Ghanim*, 763 F.3d at 1163; *Tommasetti*, 533 F.3d at 1039.

At the hearing, plaintiff testified that he became disabled on May 2, 2007, when he was injured helping his son at a midget car race track. Transcript of Proceedings ("Tr."), ECF No. 13, at 40. Plaintiff stated that the car pulled him by the arm, injuring his neck. Tr. at 41. Plaintiff testified that he lives on a 26 acre farm, where he and his girlfriend raise cattle. Plaintiff said that he put out three bales of hay for the cattle that morning, irritating his neck. Tr. at 44.

Plaintiff described that he has had a torn meniscus in his knee repaired, and a disc fusion on his neck. Tr. at 45. Plaintiff denied drinking alcohol, but uses medical marijuana. Plaintiff described difficulty sleeping and noted that sometimes sleep medication is helpful. Tr. at 46.

Plaintiff explained that he has good days and bad days, and that his neck continues to give him trouble. Tr. at 48. Plaintiff stated that he tries to take as little pain medication as possible. Plaintiff complained of numbness in his fingers, causing him to drop things. Tr. at 48. Plaintiff testified that doctors have not identified the cause of his abdominal pain. Plaintiff stated that he could not work for eight hours a day, five days a week, and that he would miss at least a couple of days each month due to the pain in his neck. Tr. at 52-53. Plaintiff estimated his productivity to be half of what it used to be. Tr. at 53-54.

In the decision, the ALJ determined that plaintiff's medically determinable impairments could reasonably cause his symptoms, but that his statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely credible. Contrary to plaintiff's assertion, the ALJ provided clear and convincing reasons, citing specific record evidence, that undermine plaintiff's subjective complaints.

6 - OPINION AND ORDER

First, the ALJ discussed that the severity of plaintiff's symptoms was not supported by the objective medical evidence. Where a claimant's own medical record undercuts his assertions, the ALJ may rely upon that contradiction to discredit the claimant. *Carmickle*, 533 F.3d at 1161; *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007). The ALJ extensively discussed the lack of objective medical support from Fransisco X. Soldevilla, M.D., the nuerosurgeon who performed the cervical diskectomy and fusion after plaintiff's May 2007 injury. Tr. at 22. As the ALJ detailed, after plaintiff's injury, an MRI showed a significant disk herniation at C5-6. Dr. Soldevilla's treatment notes reflect that plaintiff was in considerable pain prior to surgery, and that based on imaging of plaintiff's neck, surgery clearly was warranted. As the ALJ correctly indicated, Dr. Soldevilla's post-surgical imaging showed a solid fusion. Tr. at 22. After surgery, Dr. Soldevilla's treatment notes reflect that plaintiff reported substantial improvement, except that plaintiff had developed a right foot drop. For example, in July 2007, plaintiff reported going deep sea fishing, that he was back to work, and feeling "pretty good." Tr. at 294. As the ALJ specifically found, Dr. Soldevilla released him to light duty work in August 2007. Tr. at 294. In a May 2008 follow up, plaintiff reported to Dr. Soldevilla that he was "happy with his current condition" and that his foot drop had "almost returned to normal function." Tr. at 292. Imaging in September 2009 showed no evidence of hardware failure, screw loosening, or tissue swelling. Tr. at 324. The ALJ's findings are wholly supported by substantial evidence in the record. Based on this evidence, the ALJ appropriately, clearly and convincingly discounted plaintiff's allegation that he became unable to work in May of 2007.

Additionally, as the ALJ appropriately found, contrary to plaintiff's allegations, there are no substantial findings to support plaintiff's allegations of disabling low back pain, knee pain, abdominal pain or seizures. The ALJ thoroughly discussed plaintiff's left knee meniscectomy

7 - OPINION AND ORDER

performed in November 2007, that plaintiff was doing well after surgery, and that plaintiff was very active post-operatively, including two hours of vacuuming the day following surgery. Tr. at 273, 277. The ALJ discussed that contrary to plaintiff's complaints of low back pain, his 2008 and 2012 MRIs showed mild disc bulging, without evidence of canal or foraminal stenosis. Tr. at 251, 378. The ALJ accurately noted that contrary to plaintiff's complaints of longstanding abdominal pain, after an extensive work-up, his physician assured him the condition was benign. Tr. at 23, 413-14. Lastly, despite plaintiff's complaint of a seizure in September 2009, there were no abnormal findings at the time, and plaintiff has not reported any additional seizures, and does not take anti-seizure medication. Tr. at 307, 352. My careful review of the record reveals that the ALJ's findings are wholly supported by substantial evidence. Because the ALJ has provided other reasons for discounting plaintiff's credibility, I conclude the contradiction with the medical record is a clear and convincing reason to discount plaintiff's credibility.

Second, as the ALJ accurately discussed, plaintiff's extensive and varied activities of daily living are inconsistent with the degree of limitation he alleges. Inconsistencies between a claimant's self-reported daily activities and the degree of impairment alleged may support an adverse credibility finding. *Berry,* 622 F.3d at 1235. As the ALJ detailed, plaintiff is independent with self-care, shops in stores, performs light gardening and housekeeping, cares for animals on the farm, washes clothes, prepares meals, hunts, fishes, and watches television. The court acknowledges that a claimant's ability to perform some activities of daily living is not necessarily inconsistent with disability. However, the extent and variety of activities plaintiff performs, as cited by the ALJ and revealed in the record as a whole, demonstrate that the ALJ appropriately discounted plaintiff's credibility on this basis. For example, as the ALJ noted, plaintiff occasionally moves hay bales, including the

8 - OPINION AND ORDER

morning of the hearing, which is inconsistent with his allegation of total disability. Tr. at 44, 353. The record shows that plaintiff's gardening in 2010 included two hours of weed eating around a fence and an hour of limbing trees along the driveway. Tr. 328. Additionally, as the ALJ noted, plaintiff reported to a chiropracter in 2010 that he was stiff and sore after a weekend of fishing and deer hunting and lifting parts, including an engine block and heavy batteries. Tr. at 327-29. Based on this evidence, the ALJ could reasonably find plaintiff's allegations of disability inconsistent with his activities. Based on my review of the record in its entirety, I conclude that the ALJ's findings are adequately supported by substantial evidence, and provide a clear and convincing reason to discount plaintiff's credibility.

The ALJ also discounted plaintiff's credibility because he has received conservative medical treatment for his conditions, and that he has not followed his doctors' recommendations to lose weight and exercise. Because the ALJ's first two reasons provide clear and convincing support to uphold the adverse credibility determination and reasons three and four are not specifically challenged by plaintiff, I decline to address them in detail. I have reviewed reasons three and four carefully, and conclude that the ALJ's findings are supported by substantial evidence in the record as a whole and lend further support to the ALJ's negative credibility determination. *See Parra*, 481 F.3d at 751 (finding evidence of conservative treatment may be "sufficient to discount a claimant's testimony regarding severity of an impairment"); *Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991) (en banc) ("unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment" is relevant credibility factor) (internal quotation marks omitted).

In short, I readily conclude that the ALJ has provided specific, clear and convincing reasons, backed by substantial evidence, to discount plaintiff's credibility.

9 - OPINION AND ORDER

## II.    The ALJ Did Not Err in Discounting Dr. Jones's Opinion

In general, the opinion of a treating physician is given more weight than the opinion of an examining physician, and the opinion of an examining physician is afforded more weight than the opinion of a nonexamining physician. *Ghanim,* 763 F.3d at 1160; *Garrison,* 759 F.3d 995, 1012 (9th Cir. 2-14); *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007). "If a treating physician's opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [it will be given] controlling weight." *Orn,* 495 F.3d at 631 (internal quotations omitted)(alterations in original); 20 C.F.R. § 404.1527(c). To reject the uncontradicted opinion of a treating physician, the ALJ must provide "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

If the treating physician's opinion is contradicted, the ALJ must consider how much weight it is entitled to considering the factors in 20 C.F.R. § 404.1527(c)(2-6). The factors include the length of the treatment relationship, the frequency of examination, the nature and supportability of the opinion, and its consistency with other evidence in the record as a whole. 20 C.F.R. § 404.1527(d)(2-6); *Ghanim*, 763 F.3d at 1161. If a treating or examining doctor's opinion is contradicted by another doctor's opinion, it may be rejected by specific and legitimate reasons. *Taylor v. Commissioner Soc. Sec. Admin.*, 659 F.3d 1228, 1232 (9th Cir. 2011). However, "[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).

Plaintiff alleges the ALJ erred in discounting the opinion of examining physician Kevin Jones, M.D. Dr. Jones conducted a consultative physical examination of plaintiff on November 14, 2011. Tr. at 351. Dr. Jones observed that plaintiff could transfer easily from the chair to the examination table, could sit comfortably during the interview, he became uncomfortable on the examination table after 10 minutes, his gait was normal, he can squat without difficulty, and he had negative straight leg testing when seated but positive when lying down. Dr. Jones found that plaintiff had no muscle spasms or trigger points in his neck or back, but did have tenderness to palpation along his neck and upper lumbar spine. Tr. at 356. Dr. Jones assessed that plaintiff could stand and walk for up to six hours, sit for six hours, and that an ergonomic chair would provide optimal sitting position, and that plaintiff could lift and carry a maximum of 10 pounds. Tr. at 357.

According to plaintiff, the ALJ failed to provide clear and convincing reasons to discount Dr. Jones's opinion, and thus was required to incorporate Dr. Jones's 10 pound lifting and carrying restriction, as well as his need for an ergonomic chair, into the RFC. The Commissioner responds that the ALJ provided specific and legitimate reasons for giving Dr. Jones's opinion "little weight." The Commissioner is correct.

Because Dr. Jones's opinion was contradicted,[1] the ALJ was required to provide specific and legitimate reasons for discounting the opinion. In the decision, the ALJ rejected Dr. Jones's opinion

---

[1] In a December 2011 RFC assessment, nonexamining physician Neal E. Berner, M.D., opined that plaintiff could occasionally lift 20 pounds, and 10 pounds frequently. Tr. at 75-76. 90-91. Dr. Berner's opinion was affirmed on reconsideration by nonexamining physician Sharon B. Eder, M.D. Tr. at 90-91. Additionally, Dr. Soldevilla released plaintiff to light duty work in August 2007. *See Johnson v. Astrue*, No. C 12-01580 PJH, 2013 Wl 3956248, *5-6 (N.D. Cal. July 30, 2013) (describing that physician's release to light duty was consistent with ALJ's RFC determination that claimant was capable of limited range of light work and thus not disabled), *aff'd*, ___ F. App'x ___, 2015 WL 7349660 (9th Cir. Nov. 20, 2015).

that plaintiff is limited to lifting and carrying 10 pounds little weight because (1) it was inconsistent with plaintiff's activities of daily living, and (2) it is unsupported by the objective medical evidence. The ALJ's reasoning readily meets the specific and legitimate standard.

First, as discussed in detail above with respect to plaintiff's credibility, the record contains abundant evidence of plaintiff performing activities that exceed his alleged limitations. An ALJ may discount physicians' opinions based on internal inconsistencies, inconsistencies between their opinions and other evidence in the record, or other factors the ALJ deems material to resolving ambiguities. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601-02 (9th Cir. 1999) (finding ALJ appropriately discounted physician's opinion where it was inconsistent with plaintiff's activities of daily living, and where adverse credibility on that basis was upheld); *Royce v. Colvin*, Case No. 3:13-cv-01490-AA, 2014 WL 4838949, * 4-5 (D. Or. Sept. 14, 2014) (finding ALJ provided specific and legitimate reasons for discounting physician's opinion where it was contradicted by claimant's admitted activities). The ALJ specifically highlighted only two of these instances when discounting Dr. Jones's opinion that plaintiff is limited to lifting and carrying 10 pounds – hauling hay and moving furniture. Plaintiff's contention that the ALJ failed to cite to specific evidence in the record is erroneous. In the decision, the ALJ noted that plaintiff testified at the hearing to hauling hay that morning, and the ALJ discussed that in June 2012, plaintiff complained to his physician Daisuke Yamashita, M.D., of increased back pain after moving "more furniture." Tr. at 21, 23-24. The ALJ's findings are wholly supported by substantial evidence. Tr. at 44, 415. In short, I conclude the ALJ's first reason provides specific and legitimate support for discounting Dr. Jones's 10 pound lifting and carrying restriction.

12 - OPINION AND ORDER

The ALJ's second reason, inconsistency with the objective medical evidence, also is a reasonable interpretation of the record. As discussed in detail above, there is little in the objective medical record to substantiate plaintiff's allegations of debilitating neck and back pain. An ALJ may appropriately discount a physician's opinion if it is inconsistent with the objective medical record. *Tommasetti*, 533 F.3d at 1041. As the ALJ detailed, after his neck surgery, plaintiff was released to light duty work in August 2007, and follow-up cervical imaging in 2009 showed a solid fusion, stable hardware, and no soft tissue swelling. Tr. at 294, 324. Additionally, as the ALJ discussed, plaintiff's lumbar imaging in 2008 and 2012 showed only mild disc bulging, with no evidence of canal or foraminal stenosis. Tr. at 251, 378. As plaintiff reported to Dr. Jones, he takes only ibuprofen and acetaminophen for pain, and the ALJ appropriately discounted plaintiff's credibility on this basis. Tr. at 25, 353. The ALJ's findings are supported by substantial evidence, and therefore, the ALJ has provided a second specific and legitimate reason for rejecting Dr. Jones's 10 pound lifting and carrying restriction.[2]

Additionally, I reject plaintiff's contention that the ALJ was required to include Dr. Jones's recommendation that plaintiff have an ergonomic chair into the RFC and hypothetical posed to the VE. Dr. Jones identified that plaintiff's "[m]aximum sitting capacity is up to six hours" and further explained that plaintiff "would need an ergonomic chair for optimal sitting position since he is uncomfortable in certain positions." Tr. at 357. Dr. Jones's statement about the need for an

---

[2]Furthermore, even assuming *arguendo* that the ALJ should have incorporated Dr. Jones's lifting and carrying limitation, it is inconsequential to the non-disability determination. The court may not reverse an ALJ's decision for an error that is harmless. *Molina*, 674 F.3d at 1111. The ALJ asked the VE a hypothetical question that included the 10 pound lifting and carrying restriction described by Dr. Jones, and the VE identified three jobs existing in significant numbers in the national economy that a person with those limitations could perform: Electronic Assembler, Appointment Clerk, and Timekeeper. Tr. at 28.

ergonomic chair to achieve "optimal sitting position" can reasonably be interpreted as a suggestion or recommendation, and not as a functional requirement as argued by plaintiff. An ALJ is not required to include physician's recommendations in the RFC. *Carmickle*, 533 F.3d at 1165 (finding ALJ was not required to include recommendation that claimant use a reclinable chair in the RFC or hypothetical to the VE). Where "evidence exists to support more than one rational interpretation, [the court] must defer to the Commissioner's decision." *Batson*, 359 F.3d at 1193. Accordingly, the ALJ reasonably interpreted Dr. Jones's statement about the ergonomic chair as a recommendation, and its omission from the RFC or hypothetical to the VE was not error. *See Gauthier v. Commisioner Soc. Sec. Admin.*, Case No. 3:13-cv-01234-CL, 2015 WL 2239498, *4 (D. Or. May 12, 2015) (rejecting claimant's argument that physician's recommendation for an ergonomic chair was a functional requirement that was required to be included in RFC).

In sum, the ALJ provided specific and legitimate reasons, backed by substantial evidence in the record, for discounting Dr. Jones's opinion. The ALJ did not err.

### III.   The ALJ's Failure to Provide Germane Reasons for Discounting the Lay Testimony is Harmless

Lay witness testimony as to a claimant's symptoms or how an impairment affects his ability to work is competent evidence, which the ALJ must take into account. *See Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009); *Stout v. Commissioner, Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006); *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). The ALJ need not discuss every witness's testimony, and "if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Molina*, 674 F.3d at 1114. Inconsistency with other evidence in the record is a germane reason for

rejecting the testimony of a lay witness. *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). It is not reversible error to reject lay testimony when "the lay testimony described the same limitations as [claimant's] own testimony, and the ALJ's reasons for rejecting [claimant's] testimony apply with equal force to the lay testimony." *Molina*, 674 F.3d at 1122.

Plaintiff argues that the ALJ erred in failing to provide germane reasons for discounting the lay testimony of plaintiff's significant other Julie Johnston, his father Mack A. Woods, and three friends, Carol Clark, Richard Levine, and Roger Murphy. Plaintiff maintains that the lay testimony establishes that he experiences pain, can no longer perform work tasks, and has difficulty with activities of daily living, which supports a finding of disability. The Commissioner argues that the ALJ accurately discussed the lay testimony presented, but concedes that the ALJ failed to provide germane reasons for discounting it. The Commissioner contends, however, that because plaintiff has failed to identify any functional limitations described by the lay witnesses not already described by plaintiff, the ALJ's error is inconsequential to the ultimate nondisability determination, and the ALJ's error is harmless. I agree.

For example, as the ALJ discussed, Ms. Johnston described that plaintiff experiences pain, has difficulty sleeping, experiences numbness in his legs, drops things due to numbness in his hands, and that she worries plaintiff might fall down the stairs. Tr. at 227. Ms. Johnston also described that plaintiff experiences nausea, has a poor appetite, and that after plaintiff's neck surgery, his neck and back pain hinder "nearly everything" such that he is unable to do most of his former hobbies. Tr. at 189-90. In the decision, the ALJ rejected plaintiff's testimony about the severity and limiting effects of his neck pain, and found his testimony that he is unable to work due to his pain inconsistent with his extensive activities. Tr. at 25-26. Moreover, the ALJ also accounted for

plaintiff's neck and back pain in the RFC by limiting him to light or sedentary work, limiting his overhead reaching, limiting his stair and ramp climbing, and eliminating foot controls and hazardous machinery. Tr. 21, 28. Plaintiff points to no additional, specific workplace limitations described in Ms. Johnston's testimony, that if credited, establish disability. Thus, plaintiff has not established that the ALJ's failure to provide a germane reason discounting Ms. Johnston's testimony was harmful error. *Molina*, 674 F.3d at 1114, 1122; *Melton v. Astrue*, 895 F.Supp.2d 1054, 1060 (D. Or. 2012) (finding ALJ's failure to provide germane reasons to discount lay testimony was harmless).

With respect to the remaining lay testimony, the same reasons the ALJ relied upon to discredit plaintiff applies equally to the limitations described by plaintiff's father and friends. In a May 15, 2013 letter, plaintiff's father described that after plaintiff's neck and knee surgeries in 2007, plaintiff's pain has persisted and that plaintiff remains unable to do physical work. Tr. at 230-31. In a May 17, 2013 letter, Mr. Levine described that following plaintiff's 2007 accident, plaintiff's ability to work has slowly degraded, and that plaintiff's pain and stiffness prevents plaintiff from working. Tr. at 232. In a May 1, 2013 letter, Ms. Clark described that plaintiff continued to have pain and swelling after his 2007 neck surgery, and that a follow-up MRI revealed that the screws had come loose. Tr. at 233. Ms. Clark further noted that plaintiff has particular difficulty performing work involving his upper body, due to pain and swelling in his neck. *Id.* In a May 22, 2013 letter, Mr. Murphy described that after plaintiff's injury in 2007, plaintiff's ability to fish and hunt has diminished, and that he has observed plaintiff become frustrated when working on a friend's vehicle due to neck pain. Tr. at 235.

The third party statements do not differ significantly from plaintiff's, and fail to describe limitations beyond those rejected by the ALJ with well-supported, clear and convincing reasons.

Because I am confident that the ALJ's failure to provide reasons germane to each lay witness for rejecting the lay testimony did not alter the nondisability determination, I conclude the ALJ's error was harmless. *See Molina*, 674 F.3d at 1114, 1122 ("if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness"); *Valentine*, 574 F.3d at 694 ("In light of our conclusion that the ALJ provided clear and convincing reasons for rejecting [Mr.] Valentine's own subjective complaints, and because Ms. Valentine's testimony was similar to such complaints, it follows that the ALJ also gave germane reasons for rejecting her testimony.").

## IV.    ALJ Did Not Err At Step Five

### A.    Standards

At step five, the Commissioner has the burden to identify jobs that exist in significant numbers in the national economy that the claimant can perform, despite his limitations. *Zavalin v. Colvin*, 778 F.3d 842, 845 (9th Cir. 2015).   After determining the claimant's RFC, the "ALJ then considers potential occupations that the claimant may be able to perform." *Id.*; *see* 20 C.F.R. § 404.1566. In doing so, the ALJ relies upon the DOT, "which is the SSA's 'primary source of reliable job information' regarding jobs that exist in the national economy." *Zavalin*, 778 F.3d at 845-46 (quoting *Terry v. Sullivan*, 903 F.2d 1273, 1276 (9th Cir.1990)).   The ALJ may also rely upon the "testimony of vocational experts who testify about specific occupations that a claimant can perform in light of his residual functional capacity." *Zavalin*, 778 F.3d at 846; *Valentine*, 574 F.3d at 689.

### B.    ALJ Did Not Err Finding Transferability of Skills Not Material

Plaintiff argues that the ALJ erred at step five in finding that transferability of skills was not material to this case.   Plaintiff contends that under Social Security Ruling ("SSR") 82-41, because

his past relevant work occupations as a metal fabricator and painter were "skilled," the ALJ was required to provide written findings as to which skills plaintiff possessed that could be transferrable to the semi-skilled jobs identified by the VE, relying on *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219 (9th Cir. 2009).

The Commissioner contends that the ALJ correctly determined transferability of jobs skills was not material to the nondisability determination. The Commissioner argues that under the applicable Medical-Vocational Rules ("the Grids"), a finding of "not disabled" was directed whether or not plaintiff had transferable skills. The Commissioner is correct.

Social Security Ruling 82-41 provides:

> 1. *When transferability of work skills is at issue.* Transferability of skills is an issue only when an individual's impairment(s), though severe, does not meet or equal the criteria in the Listing of Impairments in Appendix 1 of the regulations but does prevent the performance of past relevant work (PRW), and that work has been determined to be skilled or semiskilled. . . . When the table rules in Appendix 2 are applicable to a case, transferability will be decisive in the conclusion of "disabled" or "not disabled" in only a relatively few instances because, even if it is determined that there are no transferable skills, a finding of "not disabled" may be based on the ability to do unskilled work.

SSR 82-41 § 1, *available at* 1982 WL 31389, *1. SSR 82-41 further states that "when the issue of skills and their transferability *must be decided*, the adjudicator or ALJ is required to make certain findings of fact and include them in the written decision. Findings should be supported with appropriate documentation." *Id.* at § 6.

In this case, the ALJ appropriately used the Grids as a framework because plaintiff does not have the RFC to perform a full range of light work, but instead is limited by other factors. *Thomas*, 278 F.3d at 960 (stating that when the Grids "do not adequately take into account claimant's abilities and limitations, the Grids are to be used only as a framework, and a vocational expert must be

consulted."). Moreover, based on plaintiff's age (44 – a "younger individual") and education (high school), the ALJ appropriately applied Rules 202.21 and 202.22, and correctly determined that transferability of job skills is not material to the determination of disability because the Grids direct a finding of "not disabled" whether or not plaintiff has transferable skills. *See* 20 C.F.R. Pt. 404, Subpt.P. App.2 § 202.21 (directing a finding of "not disabled for a "younger individual" with a high school education where previous work is skilled – skills not transferrable); *id* at § 202.22 (directing a finding of "not disabled" for a younger individual with a high school education where previous work is skilled – skills transferrable).

Plaintiff's reliance on *Bray* is misplaced. In *Bray*, the Ninth Circuit determined that the ALJ erred by finding the claimant had transferable skills but failed to articulate a clear basis for the assumption, contrary to SSR 82–41. *Bray*, 554 F.3d at 1229. In *Bray*, the issue of transferability of skills was dispositive because the claimant was of advanced age and, under the Grids, the claimant would be found disabled unless she had readily transferable skills. Id. at 1229 n. 9. Unlike *Bray*, here the Grids direct a finding of "not disabled" regardless of whether he has transferable skills. Thus, the issue of transferability of skills did not need to be decided and the ALJ did not run afoul of either SSR 82-41 or *Bray* by failing to make specific findings. *Applegate v. Comm'r Soc. Sec. Admin.*, No. 3:13-cv-02295-KI, 2015 WL 1825405 (D. Or. Apr. 22, 2015); *James v. Colvin*, No. 3:12-cv-01815-JO, 2013 WL 6145297, *3-4 (D. Or. Nov. 21, 2013) (finding transferability of skills was not material, ALJ was not required under SSR 82-41 to make specific findings of transferable skills). Thus, I conclude the ALJ did not err.

Furthermore, to the extent that plaintiff contends that the ALJ's determination that he is able to perform semi-skilled work implicitly requires a finding that he possesses transferable skills, this

argument is meritless. The Honorable Paul J. Papak recently rejected this argument in *Craft v. Colvin*, No. 3:14-cv-00592-PK, 2015 WL 4673601, *7 (D. Or. Aug. 6, 2015). In *Craft*, Judge Papak observed that semi-skilled work is defined as work that "needs some skills," and may require "alertness and close attention," or "coordination and dexterity," and that the work duties are less complex than skilled work, but more complex than unskilled work. *Id.* at *7 (quoting 20 C.F.R. § 404.1568). Moreover, Judge Papak reasoned since SSR 82-41 contemplates that "some kinds of semi-skilled work does not result in a person acquiring transferable skills," a claimant logically could not be required to possess transferable skills in order to perform semi-skilled work. *Id.* Therefore, the *Craft* court rejected the claimant's suggestion that specific findings of transferable skills are always required in order to find a claimant able perform to semi-skilled work. *Id.* at *8.

I agree with this rationale. Contrary to plaintiff's suggestion, nothing in SSR 82-41 or 20 C.F.R. § 404.1568 requires the ALJ to make specific written findings of transferable skills in order to find plaintiff able to perform semi-skilled work in this instance. Accordingly, I conclude that the ALJ did not err in finding the transferability of skills was not material. *See also Watterson v. Astrue*, Case No. 10-cv-060-JE, 2011 WL 7139424, *12 (D. Or. Nov. 16, 2011) (concluding transferability was not material to finding the claimant capable of performing semi-skilled jobs at step five).

C.    **No Apparent Conflict Exists Between VE Testimony and DOT**

Plaintiff contends that the ALJ failed to resolve an apparent conflict between the jobs identified by the VE and the DOT. According to plaintiff, the ALJ erred in relying on the VE's explanation, thus requiring remand for further vocational evidence. The Ninth Circuit has explained that "[w]hen there is an apparent conflict between the vocational expert's testimony and the DOT – for example, expert testimony that a claimant can perform an occupation involving DOT

20 - OPINION AND ORDER

requirements that appear more than the claimant can handle – the ALJ is required to reconcile the inconsistency." *Zavalin*, 778 F.3d at 846. "The ALJ must ask the expert to explain the conflict and then determine whether the vocational expert's explanation for the conflict is reasonable before relying on the expert's testimony to reach a disability determination." *Id.* (internal quotation marks omitted) (citing SSR 00–4p); *Massachi v. Astrue*, 486 F.3d 1149, 1153 (9th Cir. 2007).

In the RFC, the ALJ limited plaintiff to occasional overhead reaching. Tr. at 21. At the hearing, the ALJ posed two hypotheticals to the VE including the occasional overhead reaching limitation; the first at the light exertion level, the second at the sedentary exertion level. Tr. at 60-61 The VE identified three representative jobs that plaintiff could perform at the light level: Gate Guard, DOT #372.667-030, *available at* 1991 WL 673099 (reaching occasionally present); Food Assembler, DOT #319.4840-010, *available at* 1991 WL 672769 (reaching frequently present); and Printed Circuit Board Assembler, DOT #726.684-070, *available at* 1991 WL 679606 (reaching frequently present). Tr. at 61. And, the VE identified three representative jobs plaintiff could perform at the sedentary level – Electronic Assembler, DOT #726.684-034, *available at* 1991 WL 679599 (reaching frequently present); Appointment Clerk, DOT #237.367-010, *available at* 1991 WL 672185 (reaching frequently present); and Timekeeper, DOT #215.362-022, *available at* 1991 WL 671904 (reaching "Not Present"). Tr. at 62. Following the VE's testimony, the ALJ indicated that some of the jobs identified require reaching in at least some directions, and the ALJ noted that the DOT does not distinguish between overhead reaching and reaching in any direction. Tr. at 63. The VE confirmed that the DOT does not make such a distinction, but that he believed an individual with an occasional overhead reaching limitation could perform the jobs identified based on his 28

21 - OPINION AND ORDER

years' of experience as a rehabilitation counselor. Tr. at 63. The VE further testified that his testimony was otherwise consistent with the DOT. *Id.*

The court readily concludes that plaintiff has failed to identify an apparent conflict between the VE's testimony and the DOT. Two of the jobs identified by the VE are within plaintiff's RFC. The gate guard position requires only occasional reaching, and the timekeeper position requires no reaching whatsoever. As the VE testified, the gate guard has 129,000 positions nationally and 900 in Oregon, and the timekeeper position has 7,700 positions nationally and 106 in Oregon. Tr. at 61-62. Because these jobs constitute a significant number of jobs in the region where plaintiff lives and in several regions of the country, the ALJ's step five findings are readily supported by substantial evidence. *Gutierrez v. Commissioner Soc. Sec. Admin.*, 740 F.3d 519, 528 (9th Cir. 2014) (holding 25,000 jobs in the national economy significant and 2,500 in California significant); *Moore v. Apfel*, 216 F.3d 864, 869 (9th Cir. 2000) (finding 125,000 jobs nationally significant).

Additionally, the courts in this District have uniformly concluded that no apparent conflict exists between an occasional overhead reaching limitation and DOT descriptions requiring frequent reaching in any direction.[3] As thoroughly discussed by the Honorable Michael Simon in *Lee v. Astrue*:

> There is no direct conflict between the DOT and the VE's testimony. For the Court to find a conflict on these facts, it would have to read into the DOT's description of the mail clerk and office helper occupations a requirement of overhead reaching with both arms on a more-than-occasional basis (which the DOT defines as more than one-third of the time). In this regard, the Court notes that the DOT's

---

[3] Several courts outside the District of Oregon have found apparent conflict in similar circumstances. *See, e.g., Marquez v. Astrue*, No. CV-11-339-TUC-JGZ-DTF, 2012 WL 3011778, *3-4 (D. Ariz. May 2, 2012); *Meyer v. Astrue*, No. 1:09-cv-01448-JLT, 2010 WL 3943519, *9 (E.D. Cal. Oct. 1, 2010); *Marshall v. Astrue*, No. 08CV1735–L(WMC), 2010 WL 841252, *6 (S.D. Cal. Mar. 10, 2010).

> general descriptions for these occupations do not include work activities involving
> frequent bilateral overhead reaching. . . . Although there may be situations where a
> contradiction is not explicit, the potential conflict identified by Ms. Lee appears to
> be speculative at best.

Case No. 6:12-cv-00084-SI, 2013 WL 1296071, *11 (D. Or. Mar. 28, 2013) (footnotes omitted);

*accord Stalford v. Colvin*, Case No. 6:14-cv-01085-AA, 2015 WL 3826506, *5 (D. Or. June 17,

2015) (finding no apparent conflict between VE testimony that claimant could perform occasional

overhead reaching and DOT description requiring frequent reaching in any direction); *Sterba v.

Colvin*, Case. No. 3:13-cv-008590TC, 2014 WL 7228989, *2 (D. Or. Dec. 16, 2014) (same);

*Gonzales v. Colvin*, No. 3:12–cv–01068–AA, 2013 WL 3199656, *4 (D. Or. June 19, 2013) (same);

*Lemear v. Colvin*, No. 3:13-cv-01319-AC, 2014 WL 6809751, *2 (D. Or. Dec. 1, 2014) (finding no

conflict between VE testimony that claimant could perform work with occasional overhead reaching

and manipulative restrictions and DOT description requiring frequent handling, fingering and

reaching); *see also Sankhar v. Colvin*, Case No. 3:14-cv-01644-HZ, 2015 WL 5664285, *4 (D. Or.

Sept. 21, 2015) (finding no apparent conflict between VE testimony and DOT description concerning

visual acuity in both eyes).

　　I am persuaded by the thoughtful rationale expressed by Judge Simon and others, and absent

contrary Ninth Circuit authority, follow that reasoning here. I note that the job descriptions for food

assembler, printed circuit board assembler, appointment clerk, and electronics assembler all require

frequent reaching, but do not list any overhead activities. Where overhead work is required, the

DOT typically includes that information in the description. *Gonzales*, 2013 WL 3199656 at *4

(indicating that DOT narrative job descriptions explicitly include overhead work where required,

providing examples). Thus, the conflict identified by plaintiff in this instance appears speculative.

23 - OPINION AND ORDER

Plaintiff's argument would require this court to read into each of the above DOT job descriptions a requirement of more-than-occasional overhead reaching, a requirement not currently present. Therefore, I conclude that plaintiff has failed to identify an apparent conflict between the VE's testimony and the DOT. Accordingly, the ALJ's step five findings are supported by substantial evidence.

Finally, I am not persuaded by plaintiff's contention that the ALJ should not have relied upon the VE's explanation. Here, the ALJ asked the VE for an explanation about the discrepancy between overhead reaching and reaching generally and whether plaintiff could perform the jobs identified. The VE responded that he was relying upon his lengthy experience as vocational rehabilitation counselor. Plaintiff submits that the VE's response was less than satisfactory, and indicates that there appeared to be an interpersonal conflict between plaintiff's attorney and the VE. Although detailed information from the VE as to which specific job requirements match plaintiff's abilities and limitations is desirable, it was unnecessary in this instance as discussed above. Moreover, plaintiff makes no argument as to why or how any of the jobs identified by the VE exceed his capabilities, and plaintiff did not challenge or object to the VE's qualifications at the hearing. Thus, the ALJ's reliance on the VE's explanation was reasonable under these circumstances. *See Johnson v. Shalala*, 60 F.3d 1428, 1435-46 (9th Cir. 1995) (noting the ALJ may rely on expert testimony that contradicts the DOT where the record contains persuasive evidence to support the deviation). Because the VE identified jobs existing in significant numbers that plaintiff could perform, an additional explanation was not required.

24 - OPINION AND ORDER

For all these reasons, the conclude that the ALJ did not err in relying upon the VE's testimony, and the ALJ's Step Five determination is supported by substantial evidence in the record as a whole.

## CONCLUSION

For the reasons set forth above, the Commissioner's final decision denying benefits to plaintiff is AFFIRMED.  This action is DISMISSED.

IT IS SO ORDERED.

DATED this __19__ day of JANUARY, 2016.


_Malcolm F. Marsh_
Malcolm F. Marsh
United States District Judge

25 - OPINION AND ORDER